UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL SELVIE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Cause No. 3:20-cv-00328-GCS |
| MOHAMMED SIDDIQUI, JOHN TROST, STEPHEN RITZ, AND ALEX JONES, | ) ) ) ) |
| | ) |
| Defendants. | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

PROCEDURAL BACKGROUND

Plaintiff Michael Selvie, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), first brought suit against Defendants on April 2, 2020, pursuant to 42 U.S.C. § 1983. (Doc. 1). Plaintiff's complaint alleges two counts against the Defendants under the Eighth Amendment. (Doc. 6). The first count asserts that Defendants Trost and Ritz demonstrated deliberate indifference to Plaintiff's serious medical needs by failing to treat his bunions. *Id.* The second count alleges that Defendants Siddiqui and Ritz demonstrated deliberate indifference to Plaintiff's serious medical needs by failing to treat a ganglion cyst on his left foot. *Id.* Defendants moved for summary judgment on both counts on August 11, 2020, arguing that Plaintiff failed to exhaust his administrative remedies. (Doc. 34). Plaintiff responded on November 9, 2020, and Defendants replied on November 23, 2020. (Doc. 41 & 44). The Court held an evidentiary hearing on December

22, 2020. (Doc. 46). Pursuant to that hearing, Plaintiff supplemented his response to Defendants' motion for summary judgment on January 5, 2021. (Doc. 47). For the reasons delineated below, Defendants' motion for summary judgment is **DENIED.**

## FACTUAL BACKGROUND

On February 15, 2016, Plaintiff saw a podiatrist for severe foot pain; the podiatrist recommended surgery to remove Plaintiff's plantar fibroma and to correct painful bunions on his feet. (Doc. 35, p. 2). Plaintiff alleges that his specialist said both his bunions and plantar fibroma should be treated during the same procedure. (Doc. 41, p. 14). However, prior to Plaintiff's surgery, Defendant Trost neglected to mention Plaintiff's bunions in his treatment notes and recommendation for surgery. *Id*. Though Plaintiff received surgery for his plantar fibroma on April 6, 2016, Plaintiff contends that both Defendant Trost and Defendant Ritz denied his request for bunion surgery, prolonging his pain and demonstrating deliberate indifference to his serious medical needs in violation of the Eighth Amendment. (Doc. 35, p. 2). Plaintiff filed an emergency grievance requesting surgery on April 3, 2016. (Doc. 35, p. 3). However, the Grievance Officer and CAO denied this grievance as moot because Plaintiff was scheduled for surgery for his plantar fibroma. (Doc. 35, p. 4). Plaintiff did not appeal this decision to the ARB. *Id*.

Plaintiff's complaint further alleges that Defendant Ritz and Defendant Siddiqui failed to treat his ganglion cysts beginning in August 2018. (Doc. 35, p. 3). Plaintiff first filed an emergency grievance regarding this problem on October 23, 2018, during which he identified a lump on his left foot and requested bunion surgery. (Doc. 35, p. 4).

Although the grievance office typically provides inmates with a "receipt" showing that their grievance was received, Plaintiff did not receive such a receipt. (Doc. 41, p. 11). Plaintiff waited nine days before grieving directly to the ARB. *Id*. The ARB denied Plaintiff's grievance and requested he submit his grievance with paperwork showing the Grievance Officer's and CAO's responses; however, Plaintiff did not do so. (Doc. 35, p. 5).

Plaintiff again filed a grievance concerning a lump on his left foot and nerve problems in both of his feet on May 1, 2019. *Id*. The ARB denied this grievance for failure to provide the dates on which Plaintiff's request for medical care was denied. *Id*. On September 5, 2019, Plaintiff filed a grievance regarding the ongoing failure to treat his bunions or ganglion cyst. *Id*. The ARB denied this grievance because the underlying incidents did not occur within sixty days of Plaintiff filing the grievance. (Doc. 35, p. 6). For the reasons outlined below, the Court finds that Plaintiff exhausted his administrative remedies; Defendants' motion for summary judgment is therefore denied.

## LEGAL STANDARDS

Summary judgment is "proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983

of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added).

Generally, the Court's role on summary judgment is not to evaluate the weight of the evidence, to judge witness credibility, or to determine the truth of the matter asserted. Instead, the Court is to determine whether a genuine issue of triable fact exists. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). In *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), however, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Id.* at 740-741.

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See, e.g., Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)(noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

The statutory purpose of the PLRA is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). This allows the prison administration an opportunity to fix the problem or to reduce the damages and perhaps shed light on

factual disputes that may arise in litigation even if the prison administration's solution does not fully satisfy the prisoner. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2005). To allow otherwise would frustrate the purpose of the grievance process. *See Porter v. Nussle*, 534 U.S. 516, 526 (2002). Accordingly, in *Pavey*, the Seventh Circuit set forth procedures for a court to follow in a situation where the failure to exhaust administrative remedies is raised as an affirmative defense. The Seventh Circuit highlighted three possible outcomes if the Court finds a plaintiff did not exhaust his administrative remedies: (i) if the plaintiff failed to exhaust, the plaintiff must go back and do so; (ii) if the failure to exhaust was innocent, such as where prison officials prevent the plaintiff from properly exhausting, the plaintiff must be given another chance to exhaust; or (iii) if the failure to exhaust was the plaintiff's fault, the case is over. *See Pavey*, 544 F.3d at 742.

As an inmate confined within the IDOC, Plaintiff was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("grievance procedures") to exhaust his claims properly. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). An inmate's grievance must contain "factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(b). However, grievances are intended to give prison officials notice of a problem and a chance to correct it, rather than to give an individual defendant

notice of a claim against him. *See Jones v. Block*, 549 U.S. 199, 219 (2007). An imperfectly descriptive grievance may nevertheless succeed; for instance, if a prisoner does not know the names of individuals involved, the prisoner must include as much descriptive information about that individual as possible. *See* 20 ILL. ADMIN. CODE § 504.810(c); *see also Lewis v. Stout*, 3:18-cv-2209-MAB, 2020 WL 6271053, at *3 (S.D. Ill. Oct. 26, 2020). The pertinent inquiry is whether the inmate followed the prison's explicit procedural rules, and whether the inmate's grievance sufficiently provided prison officials with notice of the underlying problem. *See, e.g.*, *Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011)(noting that an inmate must properly follow a prison's grievance process, but finding that where the grievance form requested only a "Brief Summary of Grievance," the inmate's failure to name specific defendants was not fatal).

Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. *See* 20 ILL. ADMIN. CODE § 504.820(a). The grievance officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). The officer must then consider the grievance and report findings and recommendations in writing to the CAO within two months after receipt of the grievance, when reasonably feasible under the circumstances. *See* 20 ILL. ADMIN. CODE § 504.830(e). If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). *See* 20 ILL. ADMIN. CODE § 504.850(a). The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction,

he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

The grievance procedures also allow an inmate to file an emergency grievance. *See* 20 ILL. ADMIN. CODE § 504.840. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine that] there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender [such that] the grievance [should] be handled on an emergency basis." 20 ILL. ADMIN. CODE § 504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender indicating what action shall be or has been taken." 20 ILL. ADMIN. CODE § 504.840(b). If the CAO determines that the grievance "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE § 504.840(c). When an inmate appeals a grievance

deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

A prisoner cannot satisfy the exhaustion requirement by filing an untimely or otherwise procedurally defective grievance. *See Woodford*, 548 U.S. at 83. In order to exhaust administrative remedies, a prisoner must file complaints and appeals in the time and place the prison's administrative rules require. *See Pozo*, 286 F.3d at 1025. Unless a prisoner completes the administrative process by following the rules established for that process, exhaustion has not occurred. *Id.* at 1023.

## ANALYSIS

Plaintiff filed four grievances potentially addressing the complaints at issue in this case: (i) an April 3, 2016 grievance requesting surgery for his plantar fibroma; (ii) an October 23, 2018 grievance requesting surgery for lumps on his feet; (iii) a May 1, 2019 grievance requesting referral to a podiatrist due to Plaintiff's foot pain; and (iv) a September 5, 2019 grievance requesting surgery for Plaintiff's ongoing foot pain. (Doc. 35, Exh. B-C). Plaintiff's April 3, 2016 grievance sheet shows that the Grievance Officer returned the grievance to Plaintiff, but Plaintiff did not appeal to the ARB. (Doc. 35, p. 4; Doc. 35, Exh. B). That grievance therefore remains unexhausted. *See, e.g.*, *Pavey*, 663 F.3d at 903 (finding that a prisoner must exhaust *all* available remedies under the PLRA)(emphasis added). Whether Plaintiff's later grievances were fully exhausted presents a more complicated question. Although Plaintiff's October 23, 2018 grievance

remains unexhausted, his May 1, 2019 and September 5, 2019 grievances are exhausted. Accordingly, the Court denies Defendants' motion for summary judgment.

I.    **Plaintiff's October 23, 2018 Grievance**

The ARB denied Plaintiff's appeal of his October 23, 2018 grievance because Plaintiff did not submit a copy of the Response to Offender's Grievance from the Grievance Officer or CAO. (Doc. 35, Exh. C). There is no evidence that Plaintiff resubmitted the grievance with the proper documentation. Instead, Plaintiff states that the grievance personnel typically provide inmates with a "receipt" for their grievances; Plaintiff filed an appeal after waiting nine days without receiving a receipt. (Doc. 41, p. 11). Plaintiff claims this delay rendered his administrative remedies unavailable. *Id*.

If grievance personnel do not respond to an inmate's grievance, that inmate's administrative remedies are rendered unavailable. *See Dole*, 483 F.3d at 809. However, in order for an inmate's remedies to be unavailable due to a lack of response, an inmate must have no indication that officials are pursuing his case. *See Reid v. Balota*, 962 F.3d 325, 331 (7th Cir. 2020). For example, when prison officials state that they will inform an inmate of the status of their grievance within sixty days, "whenever possible," a period of silence exceeding six months nevertheless does not render remedies unavailable because officials may still be investigating a complicated case. *Ford v. Johnson*, 362 F.3d 395, 400 (7th Cir. 2004). In contrast, in *Reid*, the Seventh Circuit Court found that a two-month period of silence rendered administrative remedies unavailable only because the inmate had no other reason to believe that anyone was "looking into" his grievance. 962

F.3d at 331. Nevertheless, that two-month period far exceeds the nine days Plaintiff waited before appealing. Furthermore, though Plaintiff did not receive a receipt for his grievance, he had no indication that grievance officers were not looking into his case; there is no evidence Plaintiff inquired as to the status of his grievance, or that personnel had not simply overlooked giving Plaintiff the receipt rather than ignored the grievance. The Court therefore finds that Plaintiff did not properly exhaust his remedies through the October 23, 2018 grievance.

## II.     Plaintiff's May 1, 2019 and September 5, 2019 Grievances

A grievance officer's failure to respond to an inmate's grievance is not the only means of rendering an otherwise unexhausted administrative remedy "unavailable." There are three circumstances in which an administrative remedy is not capable of use to obtain relief (and therefore unavailable): (i) when the remedy operates as "a simple dead end," in which officers are unable or unwilling to provide relief; (ii) when, though mechanisms exist through which inmates can technically obtain relief, the mechanisms are "so opaque" no ordinary inmate can navigate them; or (iii) when prison administrators thwart an inmate's attempt to take advantage of available remedies through "machination, misrepresentation or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1859-1860 (2016). When a plaintiff properly followed the procedure for exhausting administrative remedies, but prison officials mishandle the grievance, the remedy is rendered unavailable. *See Dole*, 438 F.3d at 811. For example, if the ARB rejected an appeal on the basis of a grievance officer's misidentification of the inmate's prison number, a

plaintiff could argue that this mistake rendered his attempts to exhaust his administrative remedies thwarted. *See Ross v. Bock*, No. 16-C-8672, 2017 WL 6758394, at *3 (N.D. Ill. Nov. 29, 2017).

Grievance officials thwarted Plaintiff's attempts to exhaust his remedies through his May 1, 2019 and September 5, 2019 grievances by denying the grievances on the basis of procedural defects which are inapplicable to ongoing injuries. Inmates are not required to file multiple, successive grievances raising the same issues on the same facts if the inmate is alleging a continuing violation. *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). Defendants correctly point out that the Court in *Turley* considered lockdowns, as opposed to Eighth Amendment violations. However, "deliberate indifference to a serious medical need is a continuing violation that accrues when the defendant has notice of the untreated condition and ends only when treatment is provided or the inmate is released." *Jervis v. Metcheff*, No. 06-4236, 258 Fed. Appx. 3, 5-6 (7th Cir. Dec. 13, 2007)(citing *Heard v. Sheahan*, 253 F.3d 316, 318–319 (7th Cir.2001)). In such circumstances, a plaintiff may "reach back" to the point at which the defendants learned an inmate had a medical condition warranting attention, but unreasonably denied that inmate care. *Burt v. Berner*, No. 3:13–cv–794–NJR–DGW, 2015 WL 1740855, at *6 (S.D. Ill. Feb. 25, 2015)(applying the continuing violation standard used in determining the appropriate statute of limitations

period and outlined in *Heard* to the exhaustion of remedies in a *Pavey* summary judgment decision).[1]

An inmate alleging a continuing violation satisfies the exhaustion requirement when the prison has received notice of and opportunity to correct the problem. *See Laktas v. Wexford Health Sources, Inc.*, No. 18-cv-1299-NJR-RJD, 2019 WL 3928690, at *3 (S.D. Ill. Aug. 20, 2019). Grievances predicated on continuing violations are not untimely because such violations are ongoing. *Id*. *See also Ramirez v. Fahim*, No. 12-cv-1197-MJR-SCW, 2013 WL 12181943 at *3 (S.D. Ill. Dec. 20, 2013)(concluding that a plaintiff's grievance was not untimely because the plaintiff could begin the grievance process at any time that a denial of medical care was ongoing); *Arnold v. Butler*, No. 17-cv-79-SMY-RJD, 2018 WL 966540, at *3 (S.D. Ill. Feb. 20, 2018)(finding that a plaintiff can file a grievance at any time during a continuing violation, as long as the violation continued).

Defendants argue that, in order for the continuing violation doctrine to apply, Plaintiff must first have fully exhausted a proper grievance; because Plaintiff's April 3, 2016 grievance was not properly exhausted, Plaintiff cannot now rely on the continuing violation doctrine. (Doc. 44, p. 3). Defendants also argue that Plaintiff's alleged "violation" is not really continuing. *Id.* According to the Defendants, Plaintiff's April 3, 2016 grievance mentioned his plantar fibroma, but not his bunions. *Id.* Therefore, Plaintiff

---

[1] The Seventh Circuit Court of Appeals has also indicated a willingness to extend the *Heard* continuing violation doctrine to *Pavey* summary judgment motions. *See, e.g.*, *Gruenberg v. Schneider*, No. 11-3323, 474 Fed. Appx. 459, 462 (7th Cir. Apr. 10, 2012)(referencing *Heard* in a negative comparison and implying that the defendants' arguments that a grievance was filed beyond the 60-day limit would not render a grievance unexhausted).

is not alleging a violation predicated on the same issue or same facts as required by *Turley*. *Id.* (citing *Moore v. Bennette*, 517 F.3d 717, 728–729 (4th Cir.2008)). The former argument is a misstatement of law; the latter argument is a misstatement of fact.

Defendants are correct that Plaintiff filed his May 1, 2019 and September 5, 2019 grievances long after sixty days had passed from his plantar fibroma surgery. (Doc. 44, p. 3). If Plaintiff's grievances concerned only the failure to refer him to a specialist, diagnose his bunions, or other "discrete interactions" with Defendants, such arguments may have more weight. *Cf. Ridgeway v. Wexford Health Sources, Inc.*, No. 18-cv-1970-JPG-RJD, 2019 WL 8509649, at *3 (S.D. Ill. Dec. 11, 2019). Plaintiff's complaint does contain two discrete counts: first, that Defendants Trost, Siddiqui and Ritz failed to treat Plaintiff's bunions; and second, that Defendant Ritz failed to treat a ganglion cyst on Plaintiff's left foot. (Doc. 35, p. 2-3). However, Plaintiff's grievances make clear he is grieving not a specific incident in which Defendants denied him care, but Defendants' ongoing failure to address his severe foot pain. In responding to Plaintiff's May 1, 2019 grievance, the Grievance Officer summarized Plaintiff's concern thusly: "Offender grieves he needs to see a foot specialist because he has unbearable pain. He states he has nerve problems [i]n both feet and a lump on top of his left foot, and needs the correct heel lift pads for both feet." (Doc. 35, Exh. C). Similarly, in his September 5, 2019 grievance, Plaintiff states: "This grievance is to address the continued delay and increasing pain in my feet. I have had a[n] ongoing problem with treatment . . ." *Id*. The latter grievance further alleges that Plaintiff did not receive care for his bunions at the same time as his

plantar fibroma, and that Plaintiff is not receiving treatment for pain in his left foot (the cause of which was identified as the ganglion cyst in a memorandum from a registered nurse at Wexford Health Sources, Inc. to the corrections officer investigating Plaintiff's grievance). *Id.* Both grievances refer to ongoing pain caused by both Plaintiff's bunions and his ganglion cyst, sufficiently making both counts of Plaintiff's complaint a continuing violation.

Both grievances make clear that Plaintiff was not grieving a specific, discrete incident with Defendants, but rather, requesting relief for his ongoing pain and lack of treatment. Accordingly, Plaintiff was not required to have first fully exhausted his remedies in April 2016, as his pain was a continuing violation which "restarted" each day it was not treated. Furthermore, though Plaintiff's grievances may have requested different relief (namely, surgery, referral to a specialist, or heel pads), both grievances addressed Plaintiff's overall concern: his ongoing foot pain. These grievances were sufficiently clear to put prison officials on notice of Plaintiff's problem and address that problem outside of litigation. The ARB's decision to deny Plaintiff's May 1, 2019[2] and

---

[2] Defendants further assert that Plaintiff's May 1, 2019 grievance is unexhausted because Plaintiff failed to identify the specific person against whom the grievance was filed and does not provide the dates of the alleged incident. (Doc. 35, p. 10-11). These arguments are inapposite. Firstly, an inmate may provide as much descriptive information as possible in lieu of a name. *See* 20 ILL. ADMIN. CODE § 504.810(c); *see also Lewis v. Stout*, 3:18-cv-2209-MAB, 2020 WL 6271053, at *3 (S.D. Ill. Oct. 26, 2020). Plaintiff described needing specific podiatric care. It is clear that prison officials understood against whom Plaintiff filed this grievance because Plaintiff's grievance counselor prepared a memorandum with information obtained from Plaintiff's medical care professionals. (Doc. 35, Exh. C). Secondly, a continuing violation will not have a specific date for an inmate to allege; this is inherent to the violation's "continuing" nature.

September 5, 2019 grievances as untimely therefore rendered the grievance procedure unavailable to Plaintiff and rendered both of Plaintiff's grievances exhausted.

## Conclusion

For the above-stated reasons, Defendants' motion for summary judgment for failure to exhaust administrative remedies (Doc. 34) is **DENIED**.

**IT IS SO ORDERED.**

Dated:  February 1, 2021.

Digitally signed by Judge Sison 2
Date: 2021.02.01 16:05:31 -06'00'

_____
GILBERT C. SISON
United States Magistrate Judge