## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MICHAEL SELVIE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | |
| ) | **Case No. 3:20-cv-00328-GCS** |
| **MOHAMMED SIDDIQUI, V. SHAH,** ) | |
| **JOHN TROST, STEPHEN RITZ,** ) | |
| **NURSE PRACTITIONER** ) | |
| **MOLDENHAUER, NURSE** ) | |
| **PRACTITIONER ZIMMER,** ) | |
| **WEXFORD HEALTH SOURCES, INC.** ) | |
| **ANGELA CRAIN, AND ALEX JONES.** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Michael Selvie, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville") brought this suit against Defendants Siddiqui, Shah, Trost, Ritz, Moldenhauer, Zimmer, Wexford Health Sources, Inc. ("Wexford"), Crain and Jones pursuant to 42 U.S.C. § 1983 on April 2, 2020. (Doc. 1). Defendants Shah, Moldenhauer, Zimmer, Crain and Wexford were dismissed without prejudice from the present action on April 9, 2020, due to Plaintiff's failure to state a sufficient claim. (Doc. 6, p. 7).

Accordingly, Plaintiff brings two counts alleging deliberate indifference to his serious medical needs in violation of the Eighth Amendment's prohibition on cruel and unusual punishment. (Doc. 6, p. 2-3). All of Plaintiff's allegations pertain to the care and

treatment he received while he was previously incarcerated at Menard Correctional Center ("Menard") until approximately March 22, 2022. (Doc. 78, p.1). In the first count, Plaintiff alleges that Defendants Ritz, Siddiqui and Trost demonstrated deliberate indifference to Plaintiff's serious medical needs by failing to properly treat the bunions on his right foot. (Doc. 6, p. 2). In Plaintiff's second count, he alleges that Defendant Dr. Ritz demonstrated deliberate indifference to Plaintiff's serious medical needs by failing to properly treat the ganglion cyst on his left foot. (Doc. 6, p. 6).

Defendants Ritz, Siddiqui and Trost filed a Motion for Summary Judgment on January 5, 2022. (Doc. 72). The Court granted Plaintiff's Motion for Extension of Time to file a response to the Motion for Summary Judgment on February 3, 2022. (Doc. 77). Plaintiff failed to respond by April 6, 2022, and the Court extended Plaintiff's deadline to file a response to April 29, 2022. (Doc. 79). Plaintiff filed his response to the Motion for Summary Judgment on April 7, 2022. (Doc. 80). For the reasons delineated below, the **Motion for Summary Judgment is GRANTED.**

### FACTUAL BACKGROUND

A.      **Plaintiff's Bunions on the Right Foot**

On December 18, 2014, Plaintiff presented with intermittent pain in his right foot and requested that an X-Ray be ordered during nursing sick call ("NSC"). (Doc. 73, p. 2). Plaintiff was subsequently referred to and seen by a non-defendant physician on January 20, 2015, who diagnosed Plaintiff as having bi-lateral flat feet. The non-defendant physician also located a .5 cm nodule on the plantar aspect of Plaintiff's right foot and

noted that he was walking with a limp. (Doc. 73, Exh. A, p. 6). Following the examination, an X-Ray of Plaintiff's right foot was ordered by the non-defendant physician. An X-Ray of Plaintiff's right foot was taken on January 22, 2015. (Doc. 73, Exh. A., p. 33).

Plaintiff was later seen by Defendant Dr. Trost on March 17, 2015. Dr. Trost also observed a .5 cm nodule on the Plaintiff's right foot but indicated that the X-Ray of the right foot was within normal limits ("WNL"). (Doc. 73, p. 2). Considering these findings, Dr. Trost prescribed the Plaintiff 800 mg of Ibuprofen twice a day for a period of three months to alleviate his pain and elected to refer Plaintiff for collegial review. (Doc. 73, Exh A., p. 7).

Dr. Trost commenced collegial review of the Plaintiff's condition with Defendant Dr. Ritz on March 19, 2015. (Doc. 73, Exh. A, p. 23). During collegial review, Dr. Ritz denied Plaintiff's referral for an outside consult and recommended that Plaintiff begin a weight loss program, take ibuprofen for pain, and return as needed to the healthcare unit for re-evaluation. *Id.* Dr. Ritz also recommended that Menard consider submitting a request for off-shelf insoles for the Plaintiff. *Id.*

Plaintiff later presented to NSC on April 12, 2015, for tightness in his right foot. Plaintiff rated his pain level a "10 at times." (Doc. 73, Exh. A, p. 8). The non-defendant nurse that examined the Plaintiff noted a pea sized nodule under the base of the great toe on his right foot. *Id.* The non-defendant nurse referred Plaintiff to a physician, prescribed him Acetaminophen and Ibuprofen for pain relief, and recommended that he lose weight. *Id.*

On April 17, 2015, Dr. Trost followed up with Plaintiff per the recommendation from NSC. (Doc. 73, Exh. A, p. 9). In his medical note, Dr. Trost reported that Plaintiff's .5 cm nodule on the plantar aspect of his right foot was painful and had remained the same size. *Id*. In light of these findings, Dr. Trost recommended that Plaintiff be referred to a podiatrist. *Id.*

Between May 4, 2015 and September 2, 2015, Plaintiff was transferred back and forth to the Northern Reception and Classification Center ("NRC") for Court writs. (Doc. 73, Exh. A, p. 10–14). During a return to Menard on September 8, 2015, Plaintiff was seen in NSC to address multiple complaints, including pain in his right foot. (Doc. 73, Exh. A, p. 16). The nurse referred Plaintiff to a physician and provided Plaintiff with 18 tablets of Acetaminophen for pain. *Id.* However, Plaintiff was sent out on a writ once again and did not return to Menard until October 14, 2015. (Doc. 73, Exh. A, p. 17-19).

Following his return to Menard, Plaintiff was seen by Dr. Trost on December 18, 2015. (Doc. 73, Exh. A, p. 20). Dr. Trost reported a painful mass on the plantar aspect of the Plaintiff's right foot and recommended a collegial referral to podiatry. *Id.* The referral was approved by Menard's Medical Furlough Clerk on December 30, 2015. (Doc. 73, Exh. A, p. 21).

Plaintiff was seen by non-defendant podiatrist, Dr. Hinners on February 15, 2016. (Doc. 73, Exh. A, p. 27). Dr. Hinners stated that Plaintiff was presenting with a "very painful plantar fibroma and painful bunions [bilateral] with the right more painful than the left." *Id.* After examination, Hinners recommended "surgical excision" for Plaintiff's

plantar fibroma and stated that treatments for Plaintiff's bunions included "custom orthotics and surgery . . . [but that] surgical correction is the preferred treatment." *Id.* Hinners concluded his evaluation by stating that "in short, surgical excision is needed to remove the plantar fibroma [on the] right foot . . . [and that] the bunion deformity should be addressed at the same time due to the healing time which can be concurrent." *Id.*

After Dr. Hinners's evaluation, Defendant Dr. Trost submitted a collegial review for the plantar fibroma on Plaintiff's right foot. (Doc. 73, Exh. A, p. 30). Defendant Dr. Ritz approved surgery for Plaintiff's plantar fibroma. *Id.* Defendants Dr. Ritz and Trost also discussed Plaintiff's bunions during the collegial review. *Id.* However, Dr. Trost and Dr. Ritz determined that surgery for Plaintiff's bunions was not medically necessary. *Id.*

Defendant Dr. Siddiqui was not involved in the collegial review process or treatment of Plaintiff's bunions on his right foot. *See* (Doc. 1, p. 6); *see also* (Doc. 73, Exh. B, p. 37:14-17, 40:5-42:6).

## B.    Plaintiff's Ganglion Cyst on the Left Foot

On June 23, 2017, Plaintiff presented to NSC with intermittent stabbing pain around the inner medial area of his left foot. (Doc. 73, Exh. A, p. 34). The non-defendant nurse noted a "lump"[1] the size of a quarter that was firm to the touch on Plaintiff's left

---

[1]    Throughout Plaintiff's medical records, what is ultimately diagnosed as a ganglion cyst is generically referred to as a lump, mass, nodule, or lesion. Thus, those terms are used interchangeably throughout to reference the cyst on Plaintiff's left foot.

foot. *Id.* The nurse also prescribed Plaintiff 200 mg of Ibuprofen for 3 days for pain management and referred the Plaintiff to a physician for further assessment. *Id.*

Non-defendant physician Dr. Shah examined Plaintiff on July 28, 2017 and noted the presence of a "nodule" on Plaintiff's left foot. (Doc. 73, Exh. A, p. 35). Dr. Shah ordered an X-Ray of Plaintiff's left foot, which was performed on July 31, 2017. (Doc. 73, Exh. A, p. 35); *see also* (Doc. 73, Exh. A. p. 101). The X-Ray showed "no soft tissue abnormality" as well as "no acute displaced fracture [and] no dislocation." *Id.*

Non-defendant Dr. Siddiqui[2] conducted a follow-up with Plaintiff on September 4, 2017. (Doc. 73, Exh. A, p. 36). Upon examination, Dr. Siddiqui noted a 2-3 cm non-tender nodule on the dorsum (top) of Plaintiff's left foot. *Id.* He reported that it was "most likely [a] lipoma." *Id.*

Later, on April 5, 2018, Plaintiff was seen by Dr. Siddiqui to address the ineffectiveness of his prescribed pain medication, Cymbalta. (Doc. 73, Exh. A, p. 38). Dr. Siddiqui changed the Cymbalta proscription to a proscription for Nortriptyline. *Id.* During the examination, Dr. Siddiqui observed that the lesion on Plaintiff's left foot was mobile and had grown to 4-5 cm in size. *Id.* Dr. Siddiqui suspected that the lesion was likely a lipoma. *Id.* Dr. Siddiqui also noted that the lesion was causing Plaintiff pain while wearing footwear and may need to be removed. *Id.* Considering these findings, Dr. Siddiqui ordered an X-Ray of Plaintiff's left foot. *Id.* The X-Ray was performed on April

---

[2]      Dr. Siddiqui is referred to as a "Non-defendant" here as he is only listed as a Defendant in Plaintiff's first count pertaining to the treatment of the bunions on his right foot.

12, 2018, and it identified "mild multilevel degenerative change . . . especially at the metatarsal phalangeal joint of the great toe" and a tiny "calcaneal spur." (Doc. 73, Exh. A, p. 102).

Plaintiff was once again seen by Dr. Siddiqui on August 2, 2018. (Doc. 73, Exh. A, p. 39). Dr. Siddiqui's examination of the Plaintiff addressed multiple issues, including Plaintiff's left foot pain. *Id.* Dr. Siddiqui again noted that the lesion was likely a lipoma. At this time, Plaintiff demanded surgery for his left foot, and Dr. Siddiqui referred Plaintiff to collegial for a general surgery consultation. *Id.* During collegial review, Defendant Dr. Ritz determined that removal of the lesion was not "medically necessary" and that an appropriate alternative treatment plan would be to monitor the lesion on site for changes in size. (Doc. 73, Exh. A, p. 40). At this time, Dr. Ritz noted that the lesion was 2 cm by 2 cm in size and was soft. *Id.*

On December 11, 2018, Plaintiff was seen for the fourth time by Dr. Siddiqui regarding the lesion on his left foot. (Doc. 73, Exh. A, p. 41). At this visit, Plaintiff complained of burning in his feet and requested Neurontin for relief. *Id.* Plaintiff also requested to see a "foot doctor" to have his burning feet assessed. *Id.* Dr. Siddiqui encouraged Plaintiff to lose weight, but Plaintiff indicated that his weight did not have anything to do with the condition of his feet. *Id.*

From December 2018 to April 2019, Plaintiff made no complaints to the healthcare unit regarding his feet. (Doc. 73, Exh. A, p. 42-55). Plaintiff next complained about bilateral burning in his feet on April 4, 2019. (Doc. 73, Exh. A, p. 56). The non-defendant

nurse examining Plaintiff noted that Plaintiff had walked slowly into NSC. *Id.* Plaintiff also stated that he could not walk long distances. *Id.* Plaintiff was prescribed acetaminophen to control his pain, and he was referred to see a physician for "bilateral foot pain." *Id.*

Plaintiff was scheduled to be seen by a non-defendant nurse practitioner on April 12, 2019, but he refused the visit as he only wanted to see a physician. (Doc. 73, Exh. A., p. 57). Plaintiff was then seen by non-defendant Dr. Butalid on May 12, 2019. (Doc. 73, Exh. A, p. 58). Dr. Butalid noted the mass on Plaintiff's left foot was possibly a lipoma or neuroma, and he referred Plaintiff to be seen by a podiatrist. (Doc. 73, Exh. A, p. 73). Plaintiff's case was originally presented for collegial review on May 12, 2019. (Doc. 73, Exh. A, p. 59). However, Dr. Siddiqui was asked to gather more information regarding Plaintiff's condition and to re-present the case on May 23, 2019. (Doc. 73, Exh. A, p. 74). The outcome from the collegial review on May 23, 2019, is unknown. (Doc. 73, Exh. A, p. 59). However, Plaintiff's case was subsequently presented for collegial review on May 30, 2019, wherein Defendant Dr. Ritz approved Plaintiff for a podiatry consult. (Doc. 73, Exh. A, p. 60).

On July 26, 2019, Plaintiff was seen by non-defendant podiatrist Dr. Rush. (Doc. 73, Exh. A, p. 78-88). Dr. Rush diagnosed Plaintiff with a ganglion cyst of the left foot, bilateral foot pain, bilateral pes planus (flat feet), and bilateral hallux valgus (bunions). (Doc. 73, Exh. A, p. 88). During the examination, Dr. Rush advised Plaintiff of the various treatment options for the ganglion cyst, including aspiration and/or steroid injection or

surgical excision. (Doc. 73, Exh. A, p. 87). Dr. Rush informed Plaintiff that none of these options could guarantee non-recurrence. *Id.* Dr. Rush also recommended Plaintiff undergo a conservative form of treatment for his bunions and flat feet while he remained incarcerated, namely orthotic inserts. *Id.* While at the appointment, Plaintiff agreed to undergo aspiration of the ganglion cyst, along with a steroid injection. *Id.*

Two days after being seen by Dr. Rush, Dr. Siddiqui observed that Plaintiff's cyst had already refilled; he thus submitted Plaintiff for a follow-up with podiatry. (Doc. 73, Exh. A, p. 62, 89). Defendant Dr. Ritz approved the referral during collegial review with Dr. Siddiqui on August 6, 2019. *Id.*

Plaintiff was seen during a follow-up appointment by Dr. Rush on September 16, 2019. (Doc. 73, Exh. A, p. 91). Dr. Rush suggested Plaintiff undergo an MRI for further evaluation of the ganglion cyst. *Id.* At this time, Plaintiff reportedly wanted to proceed with "possible excision of cyst as [a] previous doctor ha[d] suggested." *Id.*

On September 19, 2019, Plaintiff was seen again by Dr. Siddiqui. (Doc. 73, Exh. A, p. 63). Dr. Siddiqui noted that a podiatrist had previously diagnosed Plaintiff with a ganglion cyst on his left foot and that an MRI was recommended. *Id.* Dr. Siddiqui attempted to contact Dr. Rush for further information, but he received no response. *Id.* Dr. Siddiqui then referred Plaintiff to non-defendant physician Dr. Caldwell for "ganglion removal." *Id.* Plaintiff was seen by Dr. Caldwell on September 29, 2019. Dr. Caldwell indicated that Plaintiff would not "allow anything [to] be done without [an] MRI." *Id.*

The medical furlough clerk provided Dr. Siddiqui with Dr. Rush's report from Plaintiff's follow-up visit on October 7, 2019. (Doc. 73, Exh. A. p. 67). Dr. Caldwell followed up with Plaintiff once the podiatry records were received and later referred Plaintiff back to collegial review where Dr. Ritz approved the new referral to podiatry on October 23, 2019. (Doc. 73, Exh. A, p. 68, 92). Plaintiff was then scheduled to be seen by podiatry on November 25, 2019. (Doc. 73, Exh. A, p. 93).

Dr. Rush saw Plaintiff as scheduled on November 25, 2019, for a podiatry follow-up appointment. (Doc. 73, Exh. A, p. 96-97). At that appointment, Dr. Rush noted that Plaintiff had yet to have an MRI performed and instructed him to come back once the scan was completed for further evaluation. *Id.* Dr. Rush reprinted and re-entered the MRI order for Plaintiff at this time. *Id.* She also, once again, discussed the risk of recurrence for the ganglion cyst even when excision was pursued as the course of treatment. (Doc. 73, Exh. A, p. 97).

On December 10, 2019, Dr. Siddiqui submitted the collegial referral for an MRI with and without contrast to be performed on Plaintiff's left foot per Dr. Rush's recommendation. (Doc. 73, Exh. A, p. 94). Dr Ritz, in collegial review with Dr. Siddiqui, approved the referral on December 12, 2019. (Doc. 73, Exh. A, p. 98). The MRI performed on January 3, 2020 revealed "left mid foot dorsolateral and dorsal anterior superficial subcutaneous nonenhancing cystic structures measuring up to 2.0 cm and 1.1 cm most compatible with ganglion cysts." (Doc. 73, Exh. A, p. 99).

Plaintiff was informed of his MRI results and referred to collegial review for approval of a podiatry consultation by a non-defendant nurse practitioner on January 11, 2020. (Doc. 73, Exh. A, p. 70). On May 11, 2020, Plaintiff was seen again by a non-defendant nurse practitioner who stated that Plaintiff's collegial review process had been delayed due to the coronavirus pandemic (Doc. 73, Exh. A, p. 61, 108). Plaintiff eventually received surgery for excision of his cyst on January 8, 2021. (Doc. 73, Exh. A, p. 108).

Dr. Trost was not involved in the collegial review process or treatment of Plaintiff's ganglion cyst on his left foot. (Doc. 1, p. 6, 16). *See also* (Doc. 73, Exh. B, p. 37:14-17, 40:5-42:6).

## LEGAL STANDARDS

Summary judgment is proper when the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(c); *Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The movant bears the burden of establishing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *See Santaella v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)(citing *Celotex*, 477 U.S. at 323). This Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *See Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). *See also Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009)(stating that "we are not

required to draw every conceivable inference from the record . . . we draw only reasonable inferences") (internal citations omitted). Summary judgment is also appropriate if a plaintiff cannot make a showing of an essential element of his claim. *See Celotex*, 477 U.S. at 322. While the Court may not "weigh evidence or engage in fact-finding[,]" it must determine if a genuine issue remains for trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *See Walker v. Shansky*, 28 F.3d 666, 670–671 (7th Cir. 1994), aff'd, 51 F.3d 276 (citing *Celotex*, 477 U.S. at 324). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250 (citations omitted). *Accord Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994). In other words, "inferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009) (internal citation omitted). *See also Anderson*, 477 U.S. at 252 (finding that "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]"). Instead, the non-moving party must present "definite, competent evidence to rebut the [summary

judgment] motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000) (internal citation omitted).

DISCUSSION

A prisoner seeking to establish that the medical care he received in prison was so insufficient as to violate his Eighth Amendment rights must prove that: (1) he had an objectively serious medical need, and (2) the defendant prison official was deliberately indifferent to that need. *See Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). *See also Greeno v. Daley*, 414 F.3d 645, 652-653 (7th Cir. 2005); *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996); *Thomas v. Walton*, 461 F. Supp.2d 786, 793 (S.D. Ill. 2006). Here, while Plaintiff's foot conditions are objectively serious, none of the defendants displayed deliberate indifference towards the Plaintiff while treating his bunions or ganglion cyst. Therefore, the motion for summary judgment is granted.

### A. Whether Plaintiff's bunions of the right foot and ganglion cyst of the left foot amount to objectively serious medical needs

A medical condition is objectively serious when a physician has determined that treatment is mandated, or it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Johnson v. Snyder*, 444 F.3d 579, 584-585 (7th Cir. 2006)(citing *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)), overruled on other grounds in *Hill v. Tangherlini*, 724 F.3d 965, 968 n.1 (7th Cir. 2013). Those conditions if left untreated which "could result in further significant injury or unnecessary and wanton infliction of pain" are also classified as objectively serious. *Gutierrez*, 111 F.3d 1364, 1373.

Not all medical conditions rise to the level of being objectively serious such that the Eighth Amendment is implicated. However, those conditions that "significantly affect an individual's daily activities or the existence of chronic and substantial pain" are sufficient to do so.  *See*, *e.g.*, *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996)(finding "minor aches and pains" not objectively serious); *Knox v. Butler*, Case No. 17-cv-494-SMY, 2020 WL 6701148, at *2 (S.D. Ill. Nov. 13, 2020)(finding superficial cuts and dizziness not objectively serious). *But see Gutierrez,* 111 F.3d 1364, 1373-74 (finding that a cyst on Plaintiff's back which caused "a lot of pain" was objectively serious).

While neither party addressed the question as to whether Plaintiff's bunions and ganglion cyst constituted an objectively serious medical condition, Plaintiff's medical records and deposition reveal that Plaintiff has endured substantial pain in his feet since at least 2014. *See generally* (Doc. 73, Exh. A). Medical staff at Menard repeatedly noted in their observations that Plaintiff had difficulty walking. (Doc. 73, Exh. A, p. 6, 27, 53). Plaintiff also reported in his deposition that he was forced to quit two separate jobs within the prison due to the pain he was experiencing in his feet. (Doc. 73, Exh. B, p. 13:16-19:18). Finally, Plaintiff noted during his deposition that he was unable to complete exercise activities that required him to spend significant time on his feet. (Doc. 73, Exh. B, p. 28:15–29:11). This evidence demonstrates that Plaintiff's ganglion cyst and bunions were significantly impacting Plaintiff's daily activities and that the pain was chronic in nature. Therefore, Plaintiff's bunions on his right foot and ganglion cyst on his left foot constitute objectively serious medical conditions.

**B. Whether Defendants were deliberately indifferent to Plaintiff's serious medical needs**

For a prisoner to properly assert that defendant prison personnel were deliberately indifferent to the prisoner's objectively serious medical needs, the prisoner must demonstrate that the defendant in question acted with a "sufficiently culpable state of mind." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Thus, deliberate indifference is more than negligence, and the standard actually "approaches intentional wrongdoing." *Johnson*, 444 F.3d at 585. *See also Rosario v. Brawn*, 670 F.3d 816, 821-822 (7th Cir. 2012)(requiring a plaintiff to show that defendants had near "total unconcern" for the plaintiff's welfare). When a defendant knows of and acts in disregard of an excessive risk to the plaintiff's health, the defendant is seen as acting with deliberate indifference towards that plaintiff's objectively serious medical needs. *See Greeno*, 414 F.3d at 653. Moreover, the standard "implies at a minimum actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent [that] harm can be inferred from the defendant's failure to prevent it." *Thomas*, 461 F. Supp. 2d at 793 (citing *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir. 1985), abrogated on other grounds by *Haley v. Gross*, 86 F.3d 630, 645 n.34 (7th Cir. 1996)).

Plaintiff first alleges that Defendants Dr. Siddiqui, Dr. Ritz, and Dr. Trost displayed deliberate indifference towards him when they failed to approve him for bunion surgery for his right foot. (Doc. 73, Exh. A. p. 25). However, no factual evidence has been presented by the Plaintiff demonstrating that Dr. Siddiqui was involved in the treatment or collegial review process for the bunions on his right foot. *See* (Doc. 1, p.6).

*See also* (Doc. 73, Exh. B, p. 37:14-17, 40:5-42:6). Thus, Dr. Siddiqui cannot be deemed deliberately indifferent. Additionally, Plaintiff did not provide any evidence suggesting that Dr. Ritz or Dr. Trost were deliberately indifferent. Throughout the Plaintiff's course of care, neither physician's conduct departed substantially from accepted professional judgment. Therefore, Plaintiff's claims that the aforementioned physicians treated him with deliberate indifference during the treatment of his bunions must fail.

As to Dr. Siddiqui, Plaintiff does not present any factual evidence that demonstrates that he was in any way involved in treating Plaintiff's bunions or that he participated in the decision-making process during collegial review wherein Plaintiff's bunion surgery was denied. In fact, Dr. Siddiqui was not permanently employed at Menard until June 12, 2017, over a year after Plaintiff was denied bunion surgery for his right foot. (Doc. 73, Exh. C, p. 1). Nor do any of the medical records provided identify Dr. Siddiqui as Plaintiff's treating medical provider during the period from July 6, 2015, to June 12, 2017, when Dr. Siddiqui was employed as a traveling medical doctor. (Doc. 73, Exh. A, p. 2-30). Thus, Plaintiff's claims against Dr. Siddiqui cannot survive summary judgment.

Plaintiff does, however, provide sufficient evidence to demonstrate that both Dr. Ritz and Dr. Trost were involved in the treatment of the bunions on his right foot. Between 2015 and 2016, Dr. Trost examined Plaintiff's right foot on three separate occasions and completed two separate collegial reviews with Dr. Ritz regarding the treatment plan for Plaintiff's bunions. The record also demonstrates that Plaintiff desired

bunion surgery for his right foot, and Dr. Hinners recommended that the surgery take place. However, these facts do not mean that Dr. Ritz and Dr. Trost displayed deliberate indifference towards the Plaintiff when they denied him that surgery. Neither a difference of opinion as to how to treat a medical condition nor a prisoner's dissatisfaction with a physician's chosen course of treatment gives rise to a constitutional claim. *See Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996); *Johnson*, 433 F 3d. at 1012-1013. *See also Thomas v. Martija*, 991 F.3d. 763, 772 (7th Cir. 2021)(affirming summary judgment for doctor who was not alone in his judgment about reasonable treatment). Only when such medical treatment is so blatantly inappropriate as to evidence mistreatment does the treatment demonstrate deliberate indifference. *See Johnson*, 433 F 3d. at 1012-1013.

In the instant case, the treatment plan pursued by Dr. Trost and Dr. Ritz for Plaintiff's right foot was not blatantly inappropriate and was in fact supported by Dr. Rush's later recommendations when she evaluated both of Plaintiff's feet in 2019 (Doc. 73, Exh. A, p. 366). From 2014 to 2016, both Dr. Trost and Dr. Ritz continuously evaluated the Plaintiff's right foot, took X-Ray images of the foot to monitor its condition, prescribed the Plaintiff medications for the existing pain, recommended that Plaintiff use orthotic insoles and lose weight to lessen his pain, and referred Plaintiff to a specialized physician when they determined that outside guidance was necessary. (Doc. 73, Exh. A, p. 2-30). Accordingly, though Plaintiff disagrees with the course of treatment, both Dr. Ritz and

Dr. Trost's treatment of Plaintiff's bunions on his right foot was adequate and continuously evolved when new circumstances arose.

Furthermore, Dr. Ritz and Dr. Trost were not obligated to undertake Dr. Hinners's treatment recommendation when they denied Plaintiff's bunion surgery in collegial review. While not following a specialist's advice may constitute deliberate indifference, whether a physician is deliberately indifferent in deciding to proceed with an alternative course of treatment depends on the totality of the inmate's care. *See, e.g., Gil v. Reed*, 381 F.3d 649, 663-664 (7th Cir. 2004)(finding that altering a prescription plan in direct contradiction of a specialist's explicit warning that doing so would exacerbate the plaintiff's medical condition constituted deliberate indifference); *Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999)(finding that failing to follow multiple specialists' advice for treating plaintiff's medical condition constituted deliberate indifference). *But see Guitierrez*, 111 F.3d at 1375 (finding that an isolated lapse of treatment for plaintiff's cyst did not constitute deliberate indifference given that plaintiff had otherwise experienced continuous care over a 10-month period). Here, Dr. Hinners recommended that Plaintiff's bunion surgery for his right foot take place concurrently with the surgery for his plantar fibroma. This recommendation, however, was driven in part by opportunity and efficiency as opposed to medical necessity. Dr. Hinners's notes stated that treatments for Plaintiff's bunions included "custom orthotics and surgery." (Doc. 73, Exh. A, p. 27). However, Dr. Hinners indicated that only the surgery to remove Plaintiff's plantar fibroma was actually "needed." *Id.* Thus, by electing to pursue a conservative treatment

plan and only approving the plantar fibroma surgery, Dr. Ritz and Dr. Trost were in fact acting in concert with the core of Dr. Hinners's recommendation. Additionally, none of Dr. Ritz's or Dr. Trost's actions can be construed as exacerbating Plaintiff's bunion pain, and as a result, neither physician can be seen as acting with deliberate indifference regarding Plaintiff's bunion pain in his right foot.

In Plaintiff's second count, he alleges that Dr. Ritz demonstrated deliberate indifference by not earlier approving the outside podiatry consult for Plaintiff's ganglion cyst on his left foot. A delay in treatment resulting in "exacerbation of injury or unnecessarily prolonged pain" may constitute deliberate indifference. *Perez v. Fenoglio*, 792 F.3d 768, 778 (7th Cir. 2015). Even brief, unexplained delays in treatment have been found to constitute such deliberate indifference. *See, e.g.*, *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007)(noting that two-day delay in treatment for open dislocated finger for no medical reason stated a claim against prison doctor for deliberate indifference); *Cooper*, 97 F.3d at 917 (stating that "whether the plaintiffs were in sufficient pain to entitle them to pain medication within the first 48 hours after the beating" presented question for jury). However, Plaintiff's delayed cyst surgery did not involve a clear and serious harm.

Dr. Ritz was first consulted regarding the mass on Plaintiff's left foot in August 2018. (Doc. 73, Exh. A, p. 40).  At that time, Dr. Ritz was informed that the mass was likely a lipoma. *Id.* In response, Dr. Ritz determined that monitoring the mass and re-presenting as clinically indicated was appropriate. *Id.* Dr. Ritz was not consulted again regarding the suspected Lipoma until May 2019. (Doc. 73, Exh. A, p. 59). At this time, Dr. Butalid noted

that the suspected Lipoma could be a neuroma. *Id.* Dr. Ritz was also informed at this time that the mass had become painful. *Id.* In response, Dr. Ritz requested additional information about the mass and asked Dr. Siddiqui to re-present at the following collegial review. *Id.* By the end of May 2019, less than 3 weeks after Dr. Butalid's initial referral, Plaintiff had an approval to see a podiatrist. (Doc. 73, Exh. A, p. 60). Once the Plaintiff saw Dr. Rush and Dr. Ritz received her recommendation, Dr. Ritz's care plan changed to be in line with that of Dr. Rush. (Doc. 73, Exh. A, p. 62, 89). Dr. Ritz ensured that an MRI was performed on the Plaintiff's foot, that aspiration of the cyst took place, and that ultimately surgical excision of the cyst was pursued when aspiration proved to be an ineffective treatment option. (Doc. 73, Exh. A, p. 87, 98, 108). While arriving at the surgical excision took some time, Dr. Ritz continuously responded to Plaintiff's changing condition. Therefore, Dr. Ritz did not act with deliberate indifference while treating Plaintiff's ganglion cyst on his left foot.

## CONCLUSION

For these foregoing reasons, the Court **GRANTS** Defendants' motions for summary judgment. (Doc. 72, 73). The Court **DIRECTS** the Clerk of the Court to enter judgment in Defendant's favor with prejudice and to close the case.

**IT IS SO ORDERED.**

**DATED:  September 28, 2022.**

Digitally signed by
Judge Sison 2
Date: 2022.09.28
15:33:27 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**